UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MARY BEAMER,  :
    Plaintiff  :
        vs.  :
  : CIVIL NO. 1:09-CV-02560
HERMAN CHIROPRACTIC CENTER,  :
INC.,  :
NACHAS, INC.,  :
LARRY HERMAN,  :
JASON HERMAN,  :
    Defendants  :
  :
  :

*MEMORANDUM*

I. *Introduction*

We are considering a motion for summary judgment filed by the defendants, Herman Chiropractic Center, Inc. ("HCC"), NACHAS, Inc. ("NACHAS"), Larry Herman (Dr. Herman) and Jason Herman (Mr. Herman). This matter relates to the pregnancy and subsequent departure of Mary Beamer, a chriopractor, from NACHAS, a chiropractic office. After Dr. Beamer's separation from NACHAS, she filed the instant action alleging, among other things, sex discrimination and pregnancy discrimination. Defendants argue that no reasonable jury could find for the plaintiff because she has failed to proffer any evidence of discrimination or any evidence that defendants employed fifty employees, relieving them from any liability under the Family and Medical Leave Act ("FMLA").

We will examine the motion under the well-established standard that no

reasonable jury could find for the non-moving party, drawing all inferences in the light most favorable to the non-moving party. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d. Cir. 2008).

II.   Background

The instant case arises out of an employment dispute on March 26, 2007. Dr. Mary Beamer and NACHAS, a Pennsylvania corporation that provides chiropractic services, entered into a four-year employment agreement. (doc. 24, ¶¶ 13-14.) The agreement allowed Dr. Beamer to train at Waynesboro location of NACHAS in office management while providing chiropractic care to patients. (doc. 24, ¶ 14.) According to the agreement, if Dr. Beamer left NACHAS before the end of the four-year period, she was required to pay $50,000 for training and lost patient services. (doc. 24, ¶ 16). Dr. Beamer began work at NACHAS in January 2006.

On February 22, 2007, Dr. Beamer discovered she was pregnant. (doc. 32, ¶ 36.) The following week, she notified Mr. Herman about her pregnancy. (doc. 24, ¶ 37.) On or about March 12, 2007, Dr. Beamer experienced pregnancy-related complications and left work. (doc. 24, ¶ 40.) On March 13, 2007, Dr. Beamer went to her doctor's office and was sent to the emergency room at Gettysburg Hospital. (doc. 32, ¶ 40.) At the emergency room, Dr. Beamer was diagnosed with hyper-emesis of pregnancy, which is a severe form of morning sickness that may cause dehydration. (doc. 32, ¶ 42.) While at the emergency room, Dr. Beamer was given a physician's note indicating that she was not able to work from March 13th through March 15th. (doc. 32, ¶ 42.) Dr. Beamer faxed the note to defendants on March 15th. (doc. 32, ¶ 43.)

On March 15th, the date she was scheduled to return to work, Dr. Beamer was not feeling better and called Dr. Herman, explaining she made an appointment with her OB/GYN that day and would not be at work. (doc. 24, ¶44.) In response, Dr. Herman asked if she was ever coming back to work. (doc. 24, ¶ 45.) That day, Dr. Beamer visited her OB/GYN physician, Dr. Marks, receiving a note and instructions from him not to return to work until March 21st. (doc. 32, ¶¶ 44-46.) Dr. Beamer called the NACHAS office and faxed the note to defendants the same day. (doc. 24, ¶ 48.) On March 19th, Dr. Beamer returned to the emergency room for complications of hyper-emesis of pregnancy. (doc. 32, ¶ 49.) After being treated, Dr. Beamer received a note from the ER physician indicating that she could not return to work until March 26th. (doc. 32, ¶ 49.)

Dr. Beamer returned to the emergency room at Gettysburg Hospital on March 25, 2007, suffering from heart palpitations and chest pressure, shortness of breath, and dizziness. (doc. 32, ¶ 51.) The morning of March 26th, Dr. Beamer called Dr. Herman on her way into work. (doc. 32, ¶ 54.) Dr. Beamer told Dr. Herman that she was heading into the office and was feeling better but was not 100 percent. (doc. 24, ¶ 56.) During that conversation, Dr. Beamer believed Dr. Herman stated "I don't want you coming back to the office because I don't like how you are running it." (doc. 24, ¶ 57.) Dr. Herman recalls the conversation differently. He remembers asking Dr. Beamer if she was able to return to work and she stated she was not coming back or able to do so. (doc. 24, ¶ 58.) Dr. Herman understood this to mean that she was quitting. (doc. 24, ¶ 58.) Dr. Beamer never received a termination letter from defendants. (doc. 24, ¶ 62.) Defendants cancelled Dr. Beamer's health insurance benefits within days of the

March 26th phone call. (doc. 32, ¶ 58).  In early April, defendants hired a replacement for Dr. Beamer. (doc. 32, ¶ 64.)

Dr. Beamer then filed for unemployment, indicating that she was fired because Dr. Herman did not like the way she was running the office.  (doc. 32, ¶ 62.)  Dr. Beamer also filed discrimination claims with the PHRC and the EEOC.  (doc. 24, ¶¶ 68-70.)  On October 1, 2007, Dr. Beamer received her right to sue letter from the EEOC and filed the present claim.  (doc. 24, ¶ 70.)

III.    Discussion

   A.    Discrimination on the Basis of Gender or Pregnancy

Under Title VII and the PHRA, sex discrimination claims are analyzed using the framework in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).  Under *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of discrimination.  *Id.* at 802-3  Once the plaintiff has met her burden the defendant must present a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  If a legitimate reason is given by the employer, then the burden shifts back to the plaintiff to demonstrate that the employer's reason is pretextual.  *Id.*  Pretext is determined by examining the totality of the evidence.  *Bray v. Marriott Hotels*, 110 F.3d 986, 991 (3d Cir. 1997).

Under *McDonnell Douglas*, the *prima facie* case is met if the plaintiff presents evidence that (1) she is a member of a protected class, (2) she is qualified for her position, and (3) she suffered an adverse employment action.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  In pregnancy discrimination cases, the Third Circuit has

interpreted the first element of the *prima facie* case to require evidence that the plaintiff is pregnant and the defendant knew of the pregnancy. *Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 365 (3d Cir. 2008). The Third Circuit adds an additional element, requiring a showing of a nexus between the adverse employment action and the pregnancy that raises an inference of discrimination. *Id.*

Plaintiff provided enough evidence to meet the *prima facie* case of discrimination. As a pregnant woman, Dr. Beamer established that she was a member of a protected class. Plaintiff presented evidence that defendants knew of her pregnancy. Specifically, she informed Mr. Herman of her pregnancy in the end of February 2007. (doc. 24, ¶¶ 36-37.) Dr. Beamer also provided physicians' notes regarding her absences from work which indicated pregnancy complications, putting defendants on notice of her pregnancy. The second requirement of the *prima facie* case is also met, because Plaintiff presented evidence that she is qualified for her position. Dr. Beamer was hired by defendants and maintained employment with them, not receiving any negative feedback or reports until the time of her separation from NACHAS. (doc. 32, ¶ 21.)

Plaintiff and defendant disagree as to whether there was an adverse employment action. Plaintiff contends she was fired by Dr. Herman on March 26, 2007 during their phone conversation. (doc. 32, ¶ 57.) Dr. Herman argues that Plaintiff indicated she could not perform her duties and quit during the same conversation. (doc. 24, ¶ 58.) Plaintiff provided enough evidence to meet this element of the *prima facie* case.

The additional requirement, that there is a nexus between the adverse employment action and the pregnancy that raises an inference of discrimination is also met. Defendants replaced plaintiff with a male, non-pregnant employee. (doc. 32, ¶ 64.) Plaintiff also alleges that defendants allowed men in similar situations the ability to take time off without repercussions. (doc. 32, ¶ 27.) Plaintiff provided enough evidence to meet the requirements of the *prima facie* case.

Defendants contend that if we determine that Dr. Beamer has proven a *prima facie* case, they claim her termination was a result of her poor work performance and excessive absenteeism. (doc. 28, 12.) Defendants note that Dr. Beamer was absent from work eleven days during her first year and these days were not earned pursuant to her contract. (doc. 24, ¶ 26.) This is a legitimate, non-discriminatory reason, and Dr. Beamer is required to demonstrate that this reason is pretextual. Looking at the totality of circumstances surrounding Dr. Beamer's separation from NACHAS, this element is in dispute.

Viewing the evidence in the light most favorable to the plaintiff, the plaintiff has presented genuine issues of material fact that must be decided by a jury. For that reason, we will deny the defendants' motion for summary judgment on Counts I, II, III, and IV.

  B. "Employee" and "Employer" Under the Family and Medical Leave Act

The FMLA applies to employers who employ "50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). This includes "(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such an

employer; and (II) any successor in interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(I)-(II).  Section 2611(b)(ii) provides an exception to the definition of "employer" that states "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50."

The Third Circuit has yet to decide whether the determination of a party as an "employer" is substantive or jurisdictional.  The court has previously held that the definition of "employer" under Title VII and the Age Discrimination in Employment Act ("ADEA") is a substantive question, not a jurisdictional question.  *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72 (3d Cir. 2003) (holding "the fifteen-employee threshold is a substantive element. . .and is not jurisdictional"); *Carr v. Borough of Elizabeth*, 121 Fed. Appx. 459, 460 (3d Cir. 2005) (determining employee threshold is substantive question).   Following the court's previous decisions, the employer requirement under the FMLA is a substantive question, not a jurisdictional question.  As a substantive question in a summary judgment motion, we must view the evidence in the light most favorable to the non-moving party and determine if there are disputes over genuine issues of material fact.

Defendants contend that at no time did they employ fifty or more employees. (doc. 24, ¶¶ 8-12).  Without fifty employees, defendants are not subject to the FMLA and the plaintiff's claim must fail.  Plaintiff argues that defendants had fifty employees if we adopt the "integrated employers" test and include employees at defendant's Stroudsburg, PA and Mountain Top, PA offices.

Under the integrated employers test, separate entities may be considered a

single entity under the FMLA if the totality of the circumstances show that there is (i) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control.  29 CFR 825.104(c)(2).  Plaintiff alleges that NACHAS and HCC are integrated employers under this test.  (doc. 32, ¶ 6.)  Even assuming defendants are integrated employers and that their total number of employees may be combined to reach the threshold number under the FMLA, plaintiff provides no evidence that the defendants, together, employ fifty employees.  NACHAS indicated it employed thirty-nine individuals, and defendants stated that HCC did not employ any individuals. (doc. 24, ¶¶ 8-12.)

Plaintiff argues defendants' Stroudsburg, PA and Mountain Top, PA offices should be considered in the total number employees for the FMLA threshold.  The FMLA, however, only considers employees that are located within seventy-five miles of the plaintiff's office.  29 U.S.C. § 2611(2)(B)(ii).  The defendants' offices in Stroudsburg, PA and Mountaintop, PA are both more than seventy-five miles from the Waynesboro office, and therefore are not included in the threshold number of employees under the FMLA.

Without any evidence that defendants employed fifty or more employees, even in the light most favorable to the plaintiff, there is no genuine issue of material fact and we will grant the defendant's motion for summary judgment on Count V.

    C.    Breach of Contract

Both parties agree that a four-year employment contract was entered into on January 11, 2006 by Dr. Beamer and NACHAS.  (doc. 24, ¶¶ 13-17; doc. 32, 13-17.) The agreement allowed Dr. Beamer to receive training from NACHAS at the

Waynesboro office while providing chiropractic care to patients. (doc. 24, ¶ 14.) The employment contract was enforced until March 26, 2007. Dr. Beamer alleges that defendants breached that contract when they dismissed her from NACHAS on that date. Defendants claim they did not breach the contract, because Dr. Beamer was not fired. Defendants maintain that Dr. Beamer quit during the phone conversation with Dr. Herman on March 26, 2007.

There is a genuine issue of material facts regarding whether Dr. Beamer was fired or quit her position at NACHAS. This type of fact-sensitive and credibility inquiry is to be made by a jury and cannot be resolved in a motion for summary judgment. For this reason, this portion of the defendant's motion for summary judgment is denied.

IV.   Conclusion

Based on the preceding, we will grant the defendants' motion for summary judgment on the FMLA claim in Count V and deny the defendants' motion for summary judgment on the sex and pregnancy discrimination claims in Counts I, II, III, and IV.

We will issue an appropriate order.


/s/William W. Caldwell
William W. Caldwell
United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MARY BEAMER,                              :
    Plaintiff                         :
        vs.                           :
HERMAN CHIROPRACTIC CENTER,   :  CIVIL NO. 1:09-CV-02560
INC.,                                     :
NACHAS, INC.,                             :
LARRY HERMAN,                             :
JASON HERMAN,                             :
    Defendants                        :
                                 :
                                 :

*O R D E R*

AND NOW, this 16th day of September, 2011, upon consideration of defendants' motion for summary judgment (doc. 23) filed April 29, 2011 and plaintiff's response (doc. 33) filed June 13, 2011, and pursuant to the accompanying Memorandum, it is ordered that:

    1. Defendants' motion for summary judgment on Counts I, II, III, and IV of plaintiff's complaint is denied.

    2. Defendants' motion for summary judgment on Count V of plaintiff's complaint is granted.

                                     /s/William W. Caldwell
                                     William W. Caldwell
                                     United States District Judge